**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| AARDVARK MEDICAL INC., | § § § | Case No. |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| RHINOSYSTEMS, INC., | § § § | |
| Defendant. | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Aardvark Medical Inc. ("Aardvark" or "Plaintiff") for its Complaint against Defendant RhinoSystems, Inc. ("RhinoSystems" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1.      Aardvark is organized and existing under the laws of the State of Texas, with its principal place of business located at 204 Cardinal Drive, Denton, Texas 76209.

2.      Upon information and belief, Defendant is a corporation duly organized and existing under the laws of Ohio. It has a place of business at 1 American Road, #1100, Brooklyn, Ohio 44144. Upon information and belief, Defendant does business in Texas and in the Eastern District of Texas, directly or through intermediaries. Upon information and belief, Defendant may be served with process via its registered agent, CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219. Defendant is the maker of the "Naväge Nose Cleaner," a nasal irrigation product.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 1367.

4.      This Court has specific and personal jurisdiction over the Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, the Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, the Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below. For example, on information and belief, the Accused Product is available for purchase in this Judicial District.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Upon information and belief, Defendant has transacted business in this Judicial District, has committed acts of direct and indirect infringement in this Judicial District, and has regular and established places of business in this Judicial District including, for example, authorized retailers and resellers, such as Costco and Wal-Mart, as well as, upon information and belief, distribution centers and warehouses. Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. On information and belief, Defendant through its own acts and/or through the acts of others, makes, uses, sells, offers to sell, and/or imports infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.

6.    Upon information and belief, Defendant sells and offers to sell the Accused Product in the United States, including the Eastern District of Texas, through online stores such as Amazon, Walmart, and https://www.navage.com. Upon information and belief, Defendant sells and offers to sell the Accused Product directly to customers and end-users through its website, as well as through its stores on Amazon and Walmart.

7.    As a further example, Defendant sells and offers to sell the Accused Product directly to customers and end-users in this District at the Walmart Supercenter in Marshall, Texas 75670 for in-store purchase. Defendant also sells and offers to sell the Accused Product directly to customers and end-users in this District at Costco in Plano, Texas 75074.

8.    Upon information and belief, Defendant explicitly lists numerous authorized retailers with regular and established places of business in Texas. For example, Costco located at 3650 West University Drive, McKinny Texas, 75071, and Costco located at 11220 Dallas Parkway, Frisco Texas, 75033. Moreover, Defendant holds these places of business out as retail locations for its product, as shown in the picture below.



---

[1] https://navage.com/pages/retail-locations?srsltid=AfmBOootYvEqzlySPo0cH8Vz2JwwLNPTju3McJjuiXsIJxhkkmFSA1OA

9.     Upon information and belief, Defendant holds out numerous places of business in the Eastern District of Texas on both its website and Google Maps:





---

[2] https://navage.com/pages/retail-locations?srsltid=AfmBOootYvEqzlySPo0cH8Vz2JwwLNPTju3McJjuiXsIJxhkkmFSA1OA
[3] https://www.google.com/search?q=navage+nasal+irrigation+system+marshall+texas+&sca_esv=7a9597db14345c5b&rlz=1C1GCEA_enUS1142US1142&ei=Qx2RZ7fxCIus0PEPptCfiA0&ved=0ahUKEwj3noem4ImLAxULFjQIHSboB9EQ4dUDCBA&uact=5&oq=navage+nasal+irrigation+system+marshall+texas+&gs_lp=Egxnd3Mtd2l6LXNlcnAiLm5hdmFnZSBuYXNhbCBpcnJpZ2F0aW9uIHN5c3RlbSBtYXJzaGFsbCB0ZXhhcyAyBRAhGKABMgUQIRigATIFECEYoAEyBRAhGKABMgUQIRigAUj8NFCIBliENHADeACQAQCYAQCYYcCoAGdF6oBBzEzLjExExLjK4

## PATENTS-IN-SUIT

10.     On September 5, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,750,856 (the "'856 Patent") entitled "Irrigation and Aspiration Device and Method." A true and correct copy of the '856 Patent is attached hereto as Exhibit A. .

11.     On May 3, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,318,234 (the "'234 Patent") entitled "Irrigation and Aspiration Device and Method." A true and correct copy of the '234 Patent is attached hereto as Exhibit B.

12.     On January 30, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,883,009 (the "'009 Patent") entitled "Irrigation and Aspiration Device and Method." A true and correct copy of the '009 Patent is attached hereto as Exhibit C.

13.     On January 30, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,883,010 (the "'010 Patent") entitled "Irrigation and Aspiration Device and Method." A true and correct copy of the '010 Patent is attached hereto as Exhibit D.

14.     On February 6, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,889,995 (the "'995 Patent") entitled "Irrigation and Aspiration Device and Method." A true and correct copy of the '995 Patent is attached hereto as Exhibit E.

15.     Aardvark is the sole and exclusive owner of all right, title, and interest in the '856

AQPIAQD4AQGYAhqgAp4lwgILEAAYgAQYkQIYigXCAgsQABiABBixAxiDAcICCxAuGI
AEGLEDGIMBwgIREC4YgAQYsQMY0QMYgwEYxwHCAggQABiABBixA8ICCxAuGIAE
GNEDGMcBwgIKEAAYgAQYQxiKBcICDhAAGIAEGLEDGIMBGIoFwgIFEC4YgATCAg4
QLhiABBixAxiDARiKBcICBRAAGIAEwgIOEAAYgAQYQYIYsQMYigXCAhYQLhiABBix
AxjRAxhDGIMBGMcBwgIKEC4YgAQYQxiKBcICExAuGIAEGLEDGNEDGEMYxwE
YigXCAhAQABiABBixAxhDGIMBGIoFwgINEAAYgAQYsQMYQxiKBcIClhAuGIAEGLE
DGNEDGEMYxwEYigUYlwUY3AQY3gQY4ATYAQHCAg4QLhiABBixAxjRAxjHAcICCB
AuGIAEGOUEwgIdEC4YgAQYsQMY0QMYxwEYlwUY3AQY3gQY4ATYAQHCAgYQAB
gWGB7CAgsQABiABBiGAxiKBcICCBAAGIAEGKIEwgIFEAAY7wXCAgUQIRirAsICBRA
hGJ8FmAMA4gMFEgExIECIBgG6BgYIARABGBSSBwo4LjE2LjYtMS4xoAeK6gE&sclient=
gws-wiz-serp

Patent, '234 Patent, '009 Patent, '010 Patent, and '995 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Aardvark also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

16.    The Patents-in-Suit generally cover systems and methods to the irrigation and aspiration of the nasal cavity. The technology of the Patents-in-Suit was developed by Peter C. Baker and others at Aardvark.

17.    Defendant has infringed and continues to infringe one or more of the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import nasal irrigation and aspiration devices. For example, the Naväge Nasal Irrigation System (the "Accused Product").

## COUNT I
### (Infringement of the '856 Patent)

18.    Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

19.    Aardvark has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '856 Patent.

20.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '856 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '856 Patent including, but not limited to, at least the Accused Product.

21.    Defendant has directly infringed and continues to directly infringe the '856 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C.

§ 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '856 Patent. Upon information and belief, the Accused Product practices the methods and systems covered by the '856 Patent.

22.    For example, Defendant has and continues to directly infringe at least claim 1 of the '856 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a portable, handheld device for irrigating with an irrigant and aspirating biological tissue and/or secretions comprising: a body; a first neck; a first head connected to the body, wherein the first head comprises a compliant outer surface configured to seal against a nostril, and wherein the first head is configured to be detached from the body; a first port in the first head; an irrigant reservoir in direct fluid communication with the first port, and wherein the first port is configured to deliver an irrigant to outside of the head; a first channel in the first head, wherein the first channel terminates at the first port; a second port configured to receive an aspirant from outside of the first head; a second channel in the first head, wherein the second channel terminates at the second port, and wherein the first channel is to one side of the second channel; an aspirant reservoir in direct fluid communication with the second port; and a fluid control system comprising a pump, wherein the fluid control system is configured to control an irrigation delivery pressure of the irrigant outside of the first head, and wherein the fluid control system is configured to control an aspiration pressure into the first head.



*Figure 1*

23.    The Accused Product is a portable handheld device for irrigating with an irrigant and aspirating biological tissue and/or secretions, as shown in *Figure 1*.

24.    The Accused Product comprises a body and a first neck, as shown in *Figure 1*.

25.    The Accused Product comprises a first head connected to the body, wherein the first head comprises a compliant outer surface configured to seal against a nostril, and wherein the first head is configured to be detached from the body. For example, the Accused Product contains two "Nose Pillows," the compliant surface. These seal against the nostril. The first head, shown in *Figure 1*, is detachable from the body.

26.    The Accused Product comprises a first port in the first head, as shown in *Figure 1*.

27.    The Accused Product comprises an irrigant reservoir in direct fluid communication with the first port, and wherein the first port is configured to deliver an irrigant to outside of the head, as shown *Figure 1*. For example, the first port is configured to dispense irrigant, such as

saline, outside of the head.

28.    The Accused Product comprises a first channel in the first head, wherein the first channel terminates at the first port, as shown in *Figure 1*.

29.    The Accused Product comprises a second port configured to receive an aspirant from outside of the first head, as shown in *Figure 1*. For example, the second port receives mucus that is pushed out of the nostril.

30.    The Accused Product comprises a second channel in the first head, wherein the second channel terminates at the second port, and wherein the first channel is to one side of the second channel, as shown in *Figure 1*.

31.    The Accused Product comprises an aspirant reservoir in direct fluid communication with the second port, as shown in *Figure 1*. For example, the second port delivers mucus to the aspirant port.

32.    The Accused Product comprises a fluid control system comprising a pump, wherein the fluid control system is configured to control an irrigation delivery pressure of the irrigant outside of the first head, and wherein the fluid control system is configured to control an aspiration pressure into the first head. For example, the Accused Product is powered by a battery that controls the pump which delivers pressure via saline to the first head.

33.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '856 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States. For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such

as the Accused Product. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Product, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Product in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Product in a way Defendant intends and they directly infringe the '856 Patent. Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '856 Patent, but while remaining willfully blind to the infringement.

34.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '856 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Product in this District and elsewhere in the United States and causing the Accused Product to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Product, such that the '856 Patent is directly infringed by others. The accused components within the Accused Product are material to the invention of the '856 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '856 Patent. Defendant performs these affirmative acts with knowledge of the '856 Patent and with intent, or willful blindness, that they cause the direct infringement of the '856 Patent.

35.     Defendant has willfully infringed, and continues to willfully infringe, the '856 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing or taking deliberate steps to avoid learning, that those acts infringe. For example, upon information and belief, Defendant has known of Aardvark's patents, including the '856 Patent, at least since March 26, 2024.

36.     Aardvark is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '856 Patent.

37.     Aardvark has suffered damages as a result of Defendant's direct and indirect infringement of the '856 Patent in an amount to be proved at trial.

38.     Aardvark has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '856 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '234 Patent)

39.     Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

40.     Aardvark has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '234 Patent.

41.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '234 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '234 Patent including, but not limited to, at least the Accused Product.

42.     Defendant has directly infringed and continues to directly infringe the '234 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C.

§ 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '234 Patent.  Upon information and belief, these products include the Accused Product that practices the methods and systems covered by the '234 Patent.

43.    For example, Defendant has and continues to directly infringe at least claim 1 of the '234 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a portable handheld device for irrigating and aspirating comprising: a compliant surface engageable with a nose; a body; a head; an irrigant reservoir; an aspirant reservoir; a first irrigant port; a second irrigant port; an aspirant port; a first channel; a second channel; a third channel; and a pump, wherein the head, the irrigant reservoir, the aspirant reservoir, the first irrigant port, the aspirant port, the first channel, and the second channel are removably connectable to the body, wherein the first channel has a first channel center longitudinal axis, wherein the second channel has a second channel center longitudinal axis, wherein when the head is removably connected to the body, the first channel is to one side of the second channel, such that the first channel center longitudinal axis is offset from the second channel center longitudinal axis, such that the first channel center longitudinal axis passes through the first irrigant port, and such that the second channel center longitudinal axis passes through the aspirant port, wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the second irrigant port, wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the irrigant reservoir, wherein when the head is removably connected to the body, the second channel is between the first irrigant port and the second irrigant port, wherein when the head is removably connected to the body, the second channel is between the first irrigant port and the irrigant reservoir, wherein when the head is

removably connected to the body, the second channel is between the aspirant port and the third channel, wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are the same distance from the body, wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are distal the second irrigant port, wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the first irrigant port, wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the second irrigant port, wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the aspirant port, wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are between the irrigant reservoir and the aspirant reservoir, wherein when the head is removably connected to the body, the compliant surface is between the irrigant reservoir and the aspirant reservoir, wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are on opposite sides of the portable handheld device, wherein when the head is removably connected to the body, the third channel is proximal the first irrigant port, the second irrigant port, the aspirant port, the first channel, and the second channel, wherein when the pump is on, a negative pressure provided by the pump is transferrable between the third channel and the aspirant reservoir, wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are articulatable relative to the body, wherein when the head is removably connected to the body, the first channel is articulatable relative to the body from a first channel first position to a first channel second position, and wherein an end of the first channel is the same distance from the body when the first channel is in the first channel first position and when the first channel is in the first channel second position, wherein when the head is removably connected to the body, the second channel is articulatable relative to

the body from a second channel first position to a second channel second position, and wherein an end of the second channel is the same distance from the body when the second channel is in the second channel first position and when the second channel is in the second channel second position, wherein when the head is removably connected to the body, the first channel and the second channel are articulatable relative to the third channel, wherein the irrigant reservoir comprises a first tapered shape, wherein the aspirant reservoir comprises a second tapered shape, and wherein the first tapered shape is different than the second tapered shape.



*Figure 2*

44.    The Accused Product comprises a portable handheld device for irrigating and aspirating comprising: a compliant surface engageable with a nose, a body, a head, an irrigant reservoir, an aspirant reservoir, a first irrigant port, a second irrigant port, an aspirant port, a first channel, a second channel. a third channel, and a pump, wherein the head, the irrigant reservoir, the aspirant reservoir, the first irrigant port, the aspirant port, the first channel, and the second

channel are removably connectable to the body, as shown in *Figure 2*. For example, the compliant surface is the "Nose Pillows," which house the first irrigant port and the aspirant port. The pump is responsible for generating pressure to irrigate the nose via the first irrigant port and the aspirant port.

45.    The Accused Product comprises a first and second channel, wherein the first channel has a first channel center longitudinal axis, wherein the second channel has a second channel center longitudinal axis, wherein when the head is removably connected to the body, the first channel is to one side of the second channel, such that the first channel center longitudinal axis is offset from the second channel center longitudinal axis, such that the first channel center longitudinal axis passes through the first irrigant port, and such that the second channel center longitudinal axis passes through the aspirant port, as shown in *Figure 2*. For example, the distal end of the first channel is the first irrigant port, and the distal end of the second channel is the aspirant port. The central longitudinal axis of both channels pass through their respective ports.

46.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the second irrigant port, as shown in *Figure 2*.

47.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the irrigant reservoir, as shown in *Figure 2*.

48.    The Accused Product comprises a head wherein when the head is removably connected to the body, the second channel is between the first irrigant port and the second irrigant port, as shown in *Figure 2*.

49.    The Accused Product comprises a head wherein when the head is removably connected to the body, the second channel is between the first irrigant port and the irrigant reservoir, as shown in *Figure 2*.

50.    The Accused Product comprises a head wherein when the head is removably connected to the body, the second channel is between the aspirant port and the third channel, as shown in *Figure 2*.

51.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are the same distance from the body, as shown in *Figure 2*.

52.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are distal the second irrigant port, as shown in *Figure 2*.

53.    The Accused Product comprises a head wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the first irrigant port, as shown in *Figure 2*.

54.    The Accused Product comprises a head wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the second irrigant port, as shown in *Figure 2*.

55.    The Accused Product comprises a head wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the aspirant port, as shown in *Figure 2*.

56.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are between the irrigant reservoir

and the aspirant reservoir, as shown in *Figure 2*.

57.    The Accused Product comprises a head wherein when the head is removably connected to the body, the compliant surface is between the irrigant reservoir and the aspirant reservoir, as shown in *Figure 2*.

58.    The Accused Product comprises a head wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are on opposite sides of the portable handheld device, as shown in *Figure 2*.

59.    The Accused Product comprises a head wherein when the head is removably connected to the body, the third channel is proximal the first irrigant port, the second irrigant port, the aspirant port, the first channel, and the second channel, as shown in *Figure 2*.

60.    On information and belief, the Accused Product comprises a head wherein when the pump is on, a negative pressure provided by the pump is transferrable between the third channel and the aspirant reservoir.

61.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are articulatable relative to the body. For example, the compliant surface, the "Nose Pillows," of the Accused Product can flex and bend, such that the position of the first irrigant port and the aspirant port are articulated relative to the body.

62.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first channel is articulatable relative to the body from a first channel first position to a first channel second position, and wherein an end of the first channel is the same distance from the body when the first channel is in the first channel first position and when the first channel is in the first channel second position. For example, because the first and second

17

channel both terminate at the first irrigant port and the aspirant port, respectively, they too are located in the compliant surface, which can articulate. Because the channels can articulate, they may assume many positions, such that two different positions exist where the first channel is the same distance from the body in both.

63.     The Accused Product comprises a head wherein when the head is removably connected to the body, the second channel is articulatable relative to the body from a second channel first position to a second channel second position, and wherein an end of the second channel is the same distance from the body when the second channel is in the second channel first position and when the second channel is in the second channel second position. For example, because the first and second channel both terminate at the first irrigant port and the aspirant port, respectively, they too are located in the compliant surface, which can articulate. Because the channels can articulate, they may assume many positions, such that two different positions exist where the second channel is the same distance from the body in both.

64.     The Accused Product comprises a head wherein when the head is removably connected to the body, the first channel and the second channel are articulatable relative to the third channel. Because the channels can articulate, they may articulate relative to the third channel.

65.     The Accused Product comprises an irrigant and aspirant reservoir wherein the irrigant reservoir comprises a first tapered shape, wherein the aspirant reservoir comprises a second tapered shape, and wherein the first tapered shape is different than the second tapered shape, as shown in *Figure 2*.

66.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '234 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and

elsewhere in the United States. For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Product. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Product, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Product in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Product in a way Defendant intends and they directly infringe the '234 Patent. Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '234 Patent, but while remaining willfully blind to the infringement.

67.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '234 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Product in this District and elsewhere in the United States and causing the Accused Product to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Product, such that the '234 Patent is directly infringed by others. The accused components within the Accused Product are material to the invention of the '234 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '234 Patent. Defendant performs these

affirmative acts with knowledge of the '234 Patent and with intent, or willful blindness, that they cause the direct infringement of the '234 Patent.

68.     Defendant has willfully infringed, and continues to willfully infringe, the '234 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing or taking deliberate steps to avoid learning, that those acts infringe. For example, upon information and belief, Defendant has known of Aardvark's patents, including the '234 Patent, at least since March 26, 2024.

69.     Aardvark is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '234 Patent.

70.     Aardvark has suffered damages as a result of Defendant's direct and indirect infringement of the '234 Patent in an amount to be proved at trial.

71.     Aardvark has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '234 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court

## COUNT III
### (Infringement of the '009 Patent)

72.     Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

73.     Aardvark has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '009 Patent.

74.     Defendant infringes, contributes to the infringement of, and/or induces infringement of the '009 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '009 Patent including, but not limited to, at least the Accused Product.

75.     Defendant has directly infringed and continues to directly infringe the '009 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '009 Patent. Upon information and belief, these products include the Accused Product that practices the methods and systems covered by the '009 Patent.

76.     For example, Defendant has and continues to directly infringe at least claim 1 of the '009 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a portable handheld device comprising: a compliant surface engageable with a nose; a body; a head; an irrigant reservoir; an aspirant reservoir; a first irrigant port; a second irrigant port; an aspirant port; a first channel; a second channel; and a pump, wherein the head, the irrigant reservoir, the aspirant reservoir, the first irrigant port, the aspirant port, the first channel, and the second channel are removably connectable to the body, wherein the first channel has a first channel center longitudinal axis, wherein the second channel has a second channel center longitudinal axis, wherein when the head is removably connected to the body, the first channel is to one side of the second channel, such that the first channel center longitudinal axis is offset from the second channel center longitudinal axis, such that the first channel center longitudinal axis passes through the first irrigant port, and such that the second channel center longitudinal axis passes through the aspirant port, wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the second irrigant port, wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the irrigant reservoir, wherein when the head is removably connected to the body, the second channel is between the first irrigant port and the second irrigant port, wherein when the head is removably

connected to the body, the second channel is between the first irrigant port and the irrigant reservoir, wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are the same distance from the body, wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are distal the second irrigant port, wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the first irrigant port, wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the second irrigant port, wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the aspirant port, wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are between the irrigant reservoir and the aspirant reservoir, wherein when the head is removably connected to the body, the compliant surface is between the irrigant reservoir and the aspirant reservoir, wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are on opposite sides of the portable handheld device, wherein the first channel is positionable relative to the body in a first channel first position and a first channel second position, and wherein an end of the first channel is the same distance from the body when the first channel is in the first channel first position and when the first channel is in the first channel second position, wherein the second channel is positionable relative to the body in a second channel first position and a second channel second position, and wherein an end of the second channel is the same distance from the body when the second channel is in the second channel first position and when the second channel is in the second channel second position, wherein the irrigant reservoir comprises a first tapered shape, wherein the aspirant reservoir comprises a second tapered shape, wherein the first tapered shape is different than the second tapered shape, and wherein the portable handheld device is configured to aspirate alone, irrigate

alone, sequentially aspirate and irrigate, sequentially irrigate and aspirate, or simultaneously aspirate and irrigate.



*Figure 3*

77.    The Accused Product comprises a portable handheld device comprising: a compliant surface engageable with a nose; a body; a head; an irrigant reservoir; an aspirant reservoir; a first irrigant port; a second irrigant port; an aspirant port; a first channel; a second channel; and a pump, wherein the head, the irrigant reservoir, the aspirant reservoir, the first irrigant port, the aspirant port, the first channel, and the second channel are removably connectable to the body, as shown in *Figure 3*. For example, the compliant surface is the "Nose Pillows," and the pump is responsible for, amongst other things, pumping irrigant into the nostril.

78.    The Accused Product comprises a first and second channel wherein the first channel has a first channel center longitudinal axis, wherein the second channel has a second channel center longitudinal axis, wherein when the head is removably connected to the body, the first channel is

to one side of the second channel, such that the first channel center longitudinal axis is offset from the second channel center longitudinal axis, such that the first channel center longitudinal axis passes through the first irrigant port, and such that the second channel center longitudinal axis passes through the aspirant port, as shown in *Figure 3*. For example, the distal end of the first channel is the first irrigant port, and the distal end of the second channel is the aspirant port. The central longitudinal axis of both channels pass through their respective ports.

79.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the second irrigant port, as shown in *Figure 3*.

80.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the irrigant reservoir, as shown in *Figure 3*.

81.    The Accused Product comprises a head wherein when the head is removably connected to the body, the second channel is between the first irrigant port and the second irrigant port, as shown in *Figure 3*.

82.    The Accused Product comprises a head wherein when the head is removably connected to the body, the second channel is between the first irrigant port and the irrigant reservoir, as shown in *Figure 3*.

83.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are the same distance from the body, as shown in *Figure 3*.

84.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are distal the second irrigant port,

24

as shown in *Figure 3*.

85.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first channel is between the first irrigant port and the irrigant reservoir, as shown in *Figure 3*.

86.    The Accused Product comprises a head wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the first irrigant port, as shown in *Figure 3*.

87.    The Accused Product comprises a head wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the second irrigant port, as shown in *Figure 3*.

88.    The Accused Product comprises a head wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are proximal the aspirant port, as shown in *Figure 3*.

89.    The Accused Product comprises a head wherein when the head is removably connected to the body, the first irrigant port and the aspirant port are between the irrigant reservoir and the aspirant reservoir, as shown in *Figure 3*.

90.    The Accused Product comprises a head wherein when the head is removably connected to the body, the compliant surface is between the irrigant reservoir and the aspirant reservoir, as shown in *Figure 3*. For example, the complaint surface is the "Nose Pillows," which house the first irrigant port and the aspirant port.

91.    The Accused Product comprises a head wherein when the head is removably connected to the body, the irrigant reservoir and the aspirant reservoir are on opposite sides of the portable handheld device, as shown in *Figure 3*.

92.    The Accused Product comprises a first channel wherein the first channel is positionable relative to the body in a first channel first position and a first channel second position, and wherein an end of the first channel is the same distance from the body when the first channel is in the first channel first position and when the first channel is in the first channel second position, as shown in *Figure 3*. For example, because the first channel ends in the compliant surface, and because the compliant surface is malleable, there exists two positions for the first channel, such that those positions are equidistance from the body.

93.    The Accused Product comprises a second channel wherein the second channel is positionable relative to the body in a second channel first position and a second channel second position, and wherein an end of the second channel is the same distance from the body when the second channel is in the second channel first position and when the second channel is in the second channel second position, as shown in *Figure* 3. For example, because the second channel ends in the compliant surface, and because the compliant surface is malleable, there exists two positions for the first channel, such that those positions are equidistance from the body.

94.    Upon information and belief, the Accused Product comprises a portable handheld device which is configured to aspirate alone, irrigate alone, sequentially aspirate and irrigate, sequentially irrigate and aspirate, or simultaneously aspirate and irrigate.

95.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '009 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States. For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such

as the Accused Product. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Product, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Product in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Product in a way Defendant intends and they directly infringe the '009 Patent. Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '009 Patent, but while remaining willfully blind to the infringement.

96.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '009 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Product in this District and elsewhere in the United States and causing the Accused Product to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Product, such that the '009 Patent is directly infringed by others. The accused components within the Accused Product are material to the invention of the '009 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '009 Patent. Defendant performs these affirmative acts with knowledge of the '009 Patent and with intent, or willful blindness, that they cause the direct infringement of the '009 Patent.

27

97.    Defendant has willfully infringed, and continues to willfully infringe, the '009 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing or taking deliberate steps to avoid learning that those acts infringe. For example, upon information and belief, Defendant has known of Aardvark's patents including the '009 Patent, at least since March 26, 2024.

98.    Aardvark is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the  .

99.    Aardvark has suffered damages as a result of Defendant's direct and indirect infringement of the '009 Patent in an amount to be proved at trial.

100.    Aardvark has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '009 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court

**COUNT IV**
**(Infringement of the '010 Patent)**

101.    Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

102.    Aardvark has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '010 Patent.

103.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '010 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '010 Patent including, but not limited to, at least the Accused Product.

104.    Defendant has directly infringed and continues to directly infringe the '010 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C.

§ 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '010 Patent. Upon information and belief, these products include the Accused Product that practices the methods and systems covered by the '010 Patent.

105.    For example, Defendant has and continues to directly infringe at least claim 1 of the '010 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a nasal irrigation device comprising: a source of saline solution; an effluent receptacle; a nasal interface for engaging a device user's nostril with a nozzle disposed relative to the source of saline solution for transmission of the saline solution to the nasal interface; a vacuum source for forming a relative vacuum in the effluent receptacle; a fluid passageway having a first channel and a second channel to communicate the source of saline solution with the effluent receptacle through a nasal cavity of the user; and a switch assembly for selectively controlling the vacuum source and controlling a flow of the saline solution through the fluid passageway for the transmission of the saline solution into the nostril, out of the nostril, and into the effluent receptacle wherein the saline solution flows from the source of saline solution to the effluent receptacle, wherein the first channel is connected to the source of saline solution, wherein the first channel extends through the nasal interface, wherein the first channel has a first channel first end and a first channel second end, wherein the first channel first end is farther from the source of saline solution than the first channel second end, wherein the first channel is articulatable relative to the source of saline solution and the effluent receptacle from a first channel first position to a first channel second position, wherein the first channel first end is the same distance from the source of saline solution when the first channel is in the first channel first position and when the first channel is in the first channel second position, wherein the second channel is connected to the

effluent receptacle, wherein the second channel extends through the nasal interface, wherein the second channel has a second channel first end and a second channel second end, wherein the second channel first end is farther from the effluent receptacle than the second channel second end, wherein the second channel is articulatable relative to the source of saline solution and the effluent receptacle from a second channel first position to a second channel second position, wherein the second channel first end is the same distance from the source of saline solution when the second channel is in the second channel first position and when the second channel is in the second channel second position.



*Figure 4*

106.    The Accused Product comprises a nasal irrigation device comprising: a source of saline solution; an effluent receptacle; a nasal interface for engaging a device user's nostril with a nozzle disposed relative to the source of saline solution for transmission of the saline solution to the nasal interface; a vacuum source for forming a relative vacuum in the effluent receptacle; a

fluid passageway having a first channel and a second channel to communicate the source of saline solution with the effluent receptacle through a nasal cavity of the user; and a switch assembly for selectively controlling the vacuum source and controlling a flow of the saline solution through the fluid passageway for the transmission of the saline solution into the nostril, out of the nostril, and into the effluent receptacle wherein the saline solution flows from the source of saline solution to the effluent receptacle, as shown in *Figure 4*. For example, the Accused Product contains a pump which, amongst other things, transports saline from the source of saline to the user's nostril. Additionally, the Accused Product contains a switch assembly which, amongst others, is responsible for turning the pump on and off.

107.   The Accused Product comprises a first channel wherein the first channel is connected to the source of saline solution, wherein the first channel extends through the nasal interface, wherein the first channel has a first channel first end and a first channel second end, wherein the first channel first end is farther from the source of saline solution than the first channel second end, wherein the first channel is articulatable relative to the source of saline solution and the effluent receptacle from a first channel first position to a first channel second position, wherein the first channel first end is the same distance from the source of saline solution when the first channel is in the first channel first position and when the first channel is in the first channel second position, as in *Figure* 4. For example, because the nasal interface is made from a malleable substance (complaint surface), the ends of both the first and the second channel may be positioned in a myriad of positions, two of which are equidistance from the source of saline.

108.   The Accused Product comprises a second channel wherein the second channel is connected to the effluent receptacle, wherein the second channel extends through the nasal interface, wherein the second channel has a second channel first end and a second channel second

end, wherein the second channel first end is farther from the effluent receptacle than the second channel second end, wherein the second channel is articulatable relative to the source of saline solution and the effluent receptacle from a second channel first position to a second channel second position, wherein the second channel first end is the same distance from the source of saline solution when the second channel is in the second channel first position and when the second channel is in the second channel second position, as in *Figure 4*. For example, because the nasal interface is made from a malleable substance (complaint surface), the ends of both the first and the second channel may be positioned in a myriad of positions, two of which are equidistance from the source of saline.

109. Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '010 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States. For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Product. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Product, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Product in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Product in a way Defendant intends and they directly infringe the '010 Patent. Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a

high probability that others, including end-users, infringe the '010 Patent, but while remaining willfully blind to the infringement.

110.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '010 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Product in this District and elsewhere in the United States and causing the Accused Product to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Product such that the '010 Patent is directly infringed by others. The accused components within the Accused Product are material to the invention of the '010 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '010 Patent. Defendant performs these affirmative acts with knowledge of the '010 Patent and with intent, or willful blindness, that they cause the direct infringement of the '010 Patent.

111.    Defendant has willfully infringed, and continues to willfully infringe, the '010 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing or taking deliberate steps to avoid learning that those acts infringe. For example, upon information and belief, Defendant has known of Aardvark's patents, including the '010 Patent, at least since March 26, 2024.

112.    Aardvark is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '010 Patent.

113.    Aardvark has suffered damages as a result of Defendant's direct and indirect infringement of the '010 Patent in an amount to be proved at trial.

114.    Aardvark has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '010 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court

### COUNT V
### (Infringement of the '995 Patent)

115.    Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

116.    Aardvark has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '995 Patent.

117.    Defendant infringes, contributes to the infringement of, and/or induces infringement of the '995 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '995 Patent including, but not limited to, at least the Accused Product.

118.    Defendant has directly infringed and continues to directly infringe the '995 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '995 Patent. Upon information and belief, these products include the Accused Product that practices the methods and systems covered by the '995 Patent.

119.    For example, Defendant has and continues to directly infringe at least claim 1 of the '995 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a portable handheld device comprising: a body; a tip configured to seal against a nostril; a port; a channel; a tip interface removably connectable to the body; an irrigant

reservoir; an aspirant reservoir; and an electric pump, wherein the portable handheld device is configured to perform at least one of sequentially aspirate and irrigate, sequentially irrigate and aspirate, or simultaneously aspirate and irrigate, wherein the tip, the port, and the channel are removably connectable to the body, wherein the channel is rotatable relative to the body in a channel first position and a channel second position, and wherein an end of the channel is the same distance from the body when the channel is in the channel first position and when the channel is in the channel second position, wherein when the tip is removably connected to the body, the tip interface is between the tip and the body, and wherein the tip and the tip interface are rotatable relative to the body.



*Figure 5*

120.    The Accused Product comprises a portable handheld device comprising: a body; a tip configured to seal against a nostril; a port; a channel; a tip interface removably connectable to the body; an irrigant reservoir; an aspirant reservoir; and an electric pump, as shown in *Figure 5*. For example, the pump is used to, amongst other things, pump irrigant from the irrigant reservoir to the nostril. The tip is made from a complaint surface, such that it forms a seal with the nostril. The port is the hole at the tip, and the channel runs to the port.

121.    On information and belief, the Accused Product comprises a portable handheld device wherein the portable handheld device is configured to perform at least one of sequentially aspirate and irrigate, sequentially irrigate and aspirate, or simultaneously aspirate and irrigate.

122.    The Accused Product comprises a portable handheld device wherein the tip, the port, and the channel are removably connectable to the body, as in *Figure 5*.

123.    The Accused Product comprises a channel wherein the channel is rotatable relative to the body in a channel first position and a channel second position, and wherein an end of the channel is the same distance from the body when the channel is in the channel first position and when the channel is in the channel second position, as in *Figure 5*. For example, because the channel runs through the tip interface, which is made from a compliant malleable substance, the channel may be in a myriad of positions, two of which are equidistance from the body.

124.    The Accused Product comprises a body wherein when the tip is removably connected to the body, the tip interface is between the tip and the body, and wherein the tip and the tip interface are rotatable relative to the body, as shown in *Figure 5*. For example, the tip interface may be rotated while attached to the piece connecting it to the device. Because the tip is the top of the tip interface, both the tip and tip interface may be rotatable relative to the body.

125.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '995 Patent, as provided by 35 U.S.C. § 271(b), by knowingly and intentionally inducing infringement by others, such as Defendant's customers and end-users, in this District and elsewhere in the United States. For example, Defendant's customers and end-users directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as the Accused Product. Defendant induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Product, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Product in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Defendant's inducement, Defendant's customers and end-users use the Accused Product in a way Defendant intends and they directly infringe the '995 Patent. Defendant performs these affirmative acts with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '995 Patent, but while remaining willfully blind to the infringement.

126.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '995 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Product in this District and elsewhere in the United States and causing the Accused Product to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Product, such that the '995 Patent is directly infringed by others. The accused components within the Accused

Product are material to the invention of the '995 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '995 Patent. Defendant performs these affirmative acts with knowledge of the '995 Patent and with intent, or willful blindness, that they cause the direct infringement of the '995 Patent.

127.    Defendant has willfully infringed, and continues to willfully infringe, the '995 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing or taking deliberate steps to avoid learning, that those acts infringe. For example, upon information and belief, Defendant has known of Aardvark's patents including the '995 Patent, at least since March 26, 2024.

128.    Aardvark is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287, and therefore the limitation of damages provision of 35 U.S.C. § 287(a) is not applicable with respect to the '995 Patent.

129.    Aardvark has suffered damages as a result of Defendant's direct and indirect infringement of the '995 Patent in an amount to be proved at trial.

130.    Aardvark has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '995 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT VI
### (Lanham Act Violations)

131.    Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

132.    In connection with the commercial advertising, promotion, and sale of the Accused Product, Defendant unfairly competes with Aardvark by making false, misleading, and deceptive claims regarding the nature, quality, and characteristics of the Accused Product in violation of 15

U.S.C. § 1125.

133.    For example, the Defendant's webpage, www.navage.com , for the "Nävage Starter Bundle: Nose Cleaner and 20 SaltPod Capsules" claims that "Naväge is the world's only nasal irrigator with powered suction," as shown below:

**Nasal Irrigation Works!**

Your nose is your body's air filter, and the first line of defense against allergens, dirt, and germs. Nasal irrigation cleans, rinses, and moisturizes the nose so you can breathe easier, sleep better, and feel healthier.

Naväge is the world's only nasal irrigator with powered suction, to **suck out** allergens mucus, and germs **naturally**. It's the **easy-to-use**, drug-free alternative to neti pots, pills, and sprays.

134.    The Accused Product packaging also claims that "Naväge is the world's only nasal irrigator with powered suction," as shown below:



135.    The owner's manual also claims that "Naväge is the world's only nose cleaner <u>with powered suction</u>," as shown below:

**How is the Naväge system different from other nasal irrigators?**
Powered suction is the key, and Naväge is the world's only nose cleaner with powered suction. It pulls saline through the nose while other devices such as the neti pot and nasal squeeze bottle **push**. It's like the difference between a vacuum cleaner and a broom. As a result, there's nothing as neat and convenient as Naväge!

136.   The foregoing claims are false, misleading, and deceptive because the Naväge Accused Products are not and have never been "the world's only nasal irrigator with powered suction" and/or "the world's only nose cleaner with powered suction".

137.   The foregoing claims are also material in that they are likely to influence purchasing decisions, and they have the tendency to deceive a substantial segment of relevant consumers of nasal irrigators and/or aspirators.

138.   Defendant has caused the false, misleading, and deceptive claims to enter interstate commerce including, but not limited to, through the Accused Product's online commercial advertising, product packaging, and/or owner's manual.

139.   Aardvark has been and/or is likely to be injured as a direct result of the aforementioned false, misleading, and deceptive claims regarding the nature, quality, and characteristics of the Accused Product.

140.   Through the use of false, misleading, and deceptive claims, RhinoSystems has engaged in a deliberate and unlawful scheme to confuse and/or mislead consumers regarding the nature, quality, and characteristics of the Naväge Accused Products. These acts constitute false advertising and unfair competition under Section 1125.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Aardvark prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant directly and/or indirectly infringes one or more claims of each of the Patents-in-Suit;

b.    Entry of judgment declaring that Defendant's infringement of the Patents-in-Suit is willful;

c.    An order awarding damages sufficient to compensate Plaintiff for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d.    Entry of judgment declaring that Defendant is in violation of 15 U.S.C. § 1125;

e.    An award of damages sufficient to compensate Plaintiff for its lost sales, Defendant's profits, and the cost of this action, as authorized by 15 U.S.C. § 1117(a);

f.    Enhanced damages pursuant to 35 U.S.C. § 284;

g.    Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285;

h.    An accounting for acts of infringement;

i.    Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

j.    Such other and further relief as the Court deems just and proper.

Dated:  February 18, 2025                    Respectfully submitted,

                                             /s/ *Alfred R. Fabricant*
                                             Alfred R. Fabricant
                                             NY Bar No. 2219392
                                             Email: ffabricant@fabricantllp.com
                                             Joseph Mercadante
                                             NY Bar No. 4784930
                                             Email: jmercadante@fabricantllp.com
                                             **FABRICANT LLP**
                                             411 Theodore Fremd Avenue,
                                             Suite 206 South
                                             Rye, New York 10580
                                             Telephone: (212) 257-5797

Facsimile: (212) 257-5796

Evan H. Langdon
DC Bar No. 1003057
Email: elangdon@fabricantllp.com
**FABRICANT LLP**
1101 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20004
Telephone: (202) 507-4899
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***AARDVARK MEDICAL INC.***